Anthony ROMANDETTE,
Plaintiff-Appellant,

v.

WEETABIX COMPANY, INC.,
Defendant-Appellee.

No. 11, Docket 86–2061.

United States Court of Appeals,
Second Circuit.

Argued Sept. 19, 1986.

Decided Dec. 15, 1986.

Anthony Romandette, pro se.

Laurel Wedinger, Staten Island, N.Y. (John S. Zachary, P.C., Staten Island, N.Y., of counsel), for defendant-appellee.

Before LUMBARD, OAKES and MINER, Circuit Judges.

MINER, Circuit Judge:

Anthony Romandette appeals *pro se* from an order of the United States District Court for the Southern District of New York (Brieant, J.) dismissing his diversity action for failure to effect service of the summons and complaint, Fed.R.Civ.P. 4, and for neglect to prosecute, Fed.R.Civ.P. 41(b). At the time the lawsuit was instituted—December 3, 1984—and throughout most of the litigation, Romandette was incarcerated. Due to his incarceration, he was dependent upon prison library facilities to research his legal claims and, because of his *in forma pauperis* status, dependent upon United States Marshals to effectuate service of process. Because of the special circumstances constraining Romandette in the prosecution of his suit, we hold that the district court erred in dismissing for failure to effect service and abused its discretion in dismissing for neglect to prosecute. We therefore reverse.

## BACKGROUND

Romandette filed this diversity action on December 3, 1984, asserting products liability claims against Weetabix Company, Inc. ("Weetabix"), a Massachusetts corporation. He sought compensatory and punitive damages for physical injuries, including a broken tooth, and emotional harm allegedly attributable to ingesting a foreign substance while eating Weetabix Cornflakes at the Downstate Correctional Facility. After plaintiff was granted leave to proceed *in forma pauperis*, his *pro se* summons and

complaint was forwarded to the United States Marshal for the Southern District of New York for service.[1] On December 31, 1984, pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii), the Marshal's Service mailed a copy of the summons and complaint by first class mail to Weetabix. On January 7, 1985, Weetabix's vice-president and treasurer signed and returned the acknowledgment form. In its answer, Weetabix asserted Romandette's failure to effect service in accordance with New York law[2] as an affirmative defense.

On April 25, 1985, Romandette moved, pursuant to Fed.R.Civ.P. 12(f), to strike Weetabix's affirmative defense, arguing that Weetabix had been served properly on January 7 in accordance with the Federal Rules of Civil Procedure, when the acknowledgment form was signed. Weetabix countered that service had not been effected in accordance with Fed.R.Civ.P. 4(d)(3), pertaining to service upon a corporate defendant. Between April 25 and July 2, 1985, Romandette and Weetabix actively engaged in discovery and each filed a number of motions. Finally, on July 2, Judge Gagliardi responded to several of these motions. With regard to Weetabix's defense of improper service, the court noted that whether Fed.R.Civ.P. 4(c)(2)(C)(ii) permits service by mail on out-of-state defendants is the subject of disagreement among various district courts. Although courts in the Southern District of New York have held such service invalid, Judge Gagliardi concluded that it would not be in the interests of justice to penalize Romandette for his reliance on the actions of the U.S. Marshal's Service and that Weetabix was not prejudiced since it had formally acknowledged service:

> [I]t would not be in the interest of justice and the philosophy of *Haines v. Kerner*, 404 U.S. 519 [92 S.Ct. 594, 30 L.Ed.2d 652] (1972) (*pro se* litigants given the benefit of liberal interpretation of federal rules) to foster continued uncertainty concerning the propriety of service in this case or to penalize plaintiff for his reliance on the actions of the U.S. Marshal's service. There is little risk of prejudice to defendant in this regard, since defendant formally acknowledged the service by mail, and in fact received the summons and complaint in January 1985.

Memorandum Opinion, July 2, 1985. The court noted that the Marshal's Service had indicated that it would personally serve Weetabix.

On July 26, 1985, the case was reassigned to Judge Brieant. Weetabix moved for dismissal on December 10, 1985, on the grounds that personal service had never been effected and that Romandette had failed to prosecute by taking no action since June 1985. Romandette responded that "on information and belief [the service defect] was cured in Judge Gagliardi's order...." Plaintiff's Affidavit, December 23, 1985. Additionally, he explained his six months of inaction in the case as resulting from a reversal of his state conviction and the granting of a new trial, which necessitated his transfer to Albany County Jail on July 3, 1985. That transfer placed him in a facility alleged to be lacking adequate library and legal assistance resources. He explained that he was "unable to determine the exact significance and meaning of FRCP 4 and FRCP 41(b) because said FRCP are not in our law library." *Id.* Therefore, he requested assignment of counsel, or, alternatively, a "stay in all proceedings" through March 28, 1986.

Judge Brieant determined that, "[h]aving chosen to proceed *pro se*, this litigant should have complied with Judge Gagliardi's directives," and granted Weetabix's motion to dismiss for failure to effect service and neglect to prosecute on January

---

**1.** A party allowed to proceed *in forma pauperis* is entitled to service by the U.S. Marshal. 28 U.S.C. § 1915(c); Fed.R.Civ.P. 4(c)(2)(B)(i).

**2.** Rule 4(c)(2)(C)(i) of the Federal Rules of Civil Procedure permits service on a corporation

"pursuant to the law of the State in which the district court is held...." Weetabix asserted that because New York law does not permit service by mail on an out-of-state defendant, such service was ineffective here.

21, 1986. Memorandum Opinion, January 21, 1986. Unfortunately for Romandette, although the Marshal's Service had noted a request to serve Weetabix personally on June 13, 1985, personal service was not effected until April 1, 1986, nearly three and a half months after dismissal of his action. Apparently, the delay in service was due to the volume of requests for service received by the Marshal to whom Romandette's complaint was forwarded, and not to any dilatoriness on the part of Romandette.

## DISCUSSION

### I. *Personal Service*

▮ The preliminary issue on appeal is whether the district court erred in dismissing this suit, brought by an incarcerated *pro se* litigant proceeding *in forma pauperis,* because the U.S. Marshal had yet to effect personal process through no fault of the litigant. Initially, we note that Judge Gagliardi ruled that "the interests of justice" mandated that Romandette be allowed the chance to serve Weetabix personally through the Marshal's Service. Judge Brieant, however, apparently believing that Romandette had failed to take some action to effect this service, concluded that the "litigant should have complied with Judge Gagliardi's directives." In fact, Romandette had done everything in his power to effect personal service through the Marshal's Service. Because the special circumstances of the litigant's position were before the court, and yet were not considered, we hold that the district court erred in dismissing the case for failure to effect service.

It is apparent that the court was not required to dismiss the action. As we observed in *Grammenos v. Lemos,* 457 F.2d 1067, 1070 (2d Cir.1972), Rule 4 of the Federal Rules is to be construed liberally "to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." We further noted that "incomplete or improper service will lead the court to dismiss the action *unless it appears that proper service may still*

*be obtained." Id.* (emphasis added). In the case before us, Weetabix had actual notice, as evidenced by its return of the acknowledgment form signed by a Weetabix officer, and would not have been prejudiced by allowing the suit to continue. Furthermore, this is, in fact, a case in which proper service could be yet obtained (as it was on April 1, 1986). We therefore believe that dismissal was premature. Our brethren on the Fifth Circuit aptly addressed the point:

> There may well come a time in which the Trial Court, in the administration of the affairs of the Court, sees that there is simply no reasonably conceivable means of acquiring jurisdiction over the person of the defendant. When that time comes it may be proper to dismiss the cause. But, on this record, ... the point has not yet been reached.

*Stanga v. McCormick Shipping Corp.,* 268 F.2d 544, 554 (5th Cir.1959).

As Judge Gagliardi found, the provision in Fed.R.Civ.P. 4(j) that service be effected within 120 days after filing the complaint posed no bar to Romandette's action. By the explicit terms of Rule 4(j), the court can disregard a failure to meet the 120–day limit if the plaintiff can show "good cause why such service was not made." *See generally* Siegel, *Practice Commentary on Amendment of Federal Rule 4,* 96 F.R.D. 88, 101–02. Romandette plainly exhibited good cause. As an incarcerated *pro se* litigant proceeding *in forma pauperis,* he was entitled to rely on service by the U.S. Marshals, *see* Fed.R.Civ.P. 4(c)(2)(B)(i). He indicated to the court his reliance on service by the Marshals and he timely requested that the Marshals effect personal service.

In sum, we find that dismissal by the district court was not mandated by the failure to effect service. Moreover, the interests of justice, informed by a liberal interpretation of Rule 4, are best served by allowing this litigant to rely on the personal service, albeit untimely, ultimately effected by the Marshal's Service.

## II. *Failure to Prosecute*

Dismissal for failure to prosecute, pursuant to Fed.R.Civ.P. 41(b), is a matter committed to the discretion of the district court, *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir.1982), which we will review on an abuse of discretion standard, *see Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir.1980). At the outset, however, we note that dismissal is "a harsh remedy to be utilized only in extreme situations." *Theilmann v. Rutland Hospital, Inc.*, 455 F.2d 853, 855 (2d Cir.1972) (per curiam); *accord Merker v. Rice*, 649 F.2d 171, 173–74 (2d Cir.1981).

In *Harding v. Federal Reserve Bank of New York*, 707 F.2d 46, 50 (2d Cir.1983), we identified the factors that an appellate court, viewing the record as a whole, need assess in ruling on the district court's dismissal for failure to prosecute. These factors include (1) the duration of plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay; (4) whether the district judge has carefully balanced the need to alleviate court calendar congestion and a party's right to due process; and (5) whether the court has assessed the efficacy of lesser sanctions. *Id.*

The record indicates that from the inception of this case through Judge Gagliardi's order of July 2, 1985, Romandette actively prosecuted his claim. He diligently pursued discovery and both set forth and responded to a number of motions. During this period, Weetabix itself was responsible for several delays in moving the action forward. However, from July to December, 1985 no action was taken by Romandette. This six-month hiatus was readily explainable by his transfer to a county facility, a facility apparently lacking the library and legal assistance resources that Romandette required to pursue this civil claim, where he awaited the retrial of his criminal case. Indeed, by affidavit filed with the district court on December 23, 1985, Romandette communicated his research difficulties to the court and requested assignment of counsel or, alternatively, a stay of further proceedings. Thus, we find that the period of inaction on Romandette's part was excusable. While our application of the first *Harding* factor, therefore, is the controlling element here, the remaining factors also favor Romandette. Romandette never was warned that further delay would result in dismissal. Neither do we believe that Weetabix was prejudiced by the delay, there being no indication that evidence is likely to be lost, or that discovery has been made more difficult. *See Davis v. Musler*, 713 F.2d 907, 916 (2d Cir.1983). Additionally, there is no indication that the district court considered calendar congestion or Romandette's due process rights. Finally, while we do not believe that any sanctions were appropriate, the district court gave no consideration to the "efficacy of lesser sanctions."

We therefore hold that the district court abused its discretion by dismissing for failure to prosecute.

## CONCLUSION

In sum, we hold that Romandette's special circumstances as a *pro se* litigant, proceeding *in forma pauperis* while incarcerated, should have been taken into account by the district court. In the interests of justice, the court should have allowed the U.S. Marshals Service to effect personal service, since Romandette had done everything in his power to comply with Rule 4 and the defendant had actual notice of the suit. Furthermore, we hold that the district court abused its discretion by dismissing for failure to prosecute, when the period of inaction was readily explainable by Romandette's transfer to await retrial in a criminal case.

Reversed and remanded.